**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0003337
09-MAY-2014
08:45 AM**

NO. CAAP-13-0003337

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF
CD

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-S NO. 11-0001)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Appellant Father (Father) appeals from the Order
Terminating Parental Rights, filed on July 30, 2013 in the Family
Court of the Third Circuit (family court).[1]

On appeal, Father claims the family court erred by
terminating his parental rights because (1) there was
insufficient evidence that Father actually committed an alleged
sexual offense, (2) there was insufficient evidence that Father
suffered from mental illness so as to establish that he was
unable to provide a safe family home, and (3) there was
insufficient evidence to support the additional bases relied upon
to show that Father was unable to provide a safe family home.
Father challenges the family court's findings of fact (FOF) and
conclusions of law (COL) related to, and based upon, the issues
raised in his points of error.

Upon careful review of the record and the briefs
submitted by the parties and having given due consideration to

---

[1] The Honorable Anthony K. Bartholomew presided.

the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows.

With regard to family court decisions in general, the Hawai'i Supreme Court has expressed that

> the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001)). Moreover, with regard to FOFs and COLs,

> [t]he family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
>
> > On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are "not binding upon an appellate court and are freely reviewable for their correctness.["]
>
> > . . . .
>
> > Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

Fisher, 111 Hawai'i at 47, 137 P.3d at 361 (citations omitted).

The relevant Findings of Fact regarding Father are:

> 56. The safety concerns regarding Father centered on his chronic mental health issues, his lack of insight as to his impairments, his inability to be his wife's supervisor and caretaker, his unaddressed domestic violence issues and his lack of participation in the Court ordered psycho-sexual examination to address the DHS' concerns regarding Father being confirmed as a perpetrator of sexual abuse to another child in a different CWS case.
>
> 57. Throughout the case, Father continued to behave in a manner with DHS and service providers that did not allow for a workable situation. Father's behavior was viewed as violent and threatening, or obstinate, at the very least. Father's behavior caused him to be discharged from the psychosexual

assessment with Dr. Hall and PARENTS, Inc. Comprehensive Counseling Services, and supervised visitation, leading to his failure to comply with the Court ordered service plan.

58. Father lacks insight to address his mental health issues. He tries, but is not capable of being his wife's mental health worker and supervisor.

59. Father cannot be protective of the child because, although he is considered higher functioning than Mother, he has severe mental health issues and unresolved violent and threatening behavior of his own.

60. Due to his lack of cooperation, there were two failed attempts at a psychosexual examination for Father. Thus, Father never completed this Court ordered assessment.

61. Father participated in a psychological evaluation on April 6, 2011 with Dr. John Wingert.

62. Father was diagnosed with Bipolar Disorder, NOS by history, History of Polysubstance Abuse, Personality Disorder, NOS with Antisocial, Paranoid and Narcissistic traits. Dr. Wingert formulated, inter alia, that Father has disregard for social standards and values as well as marked rebellious and antisocial types of personality features. Dr. Wingert also formulated that Father has difficulty accepting responsibility for his behavior and failures and instead, blames his difficulties on others. Dr. Wingert also stated that it was unlikely that Father would progress at all in services and prognosis for change was regarded as poor. Father was viewed as at increased risk for child neglect and child abuse related concerns. Dr. Wingert also listed as one of the recommendations that Father participate in mental health services and psychiatric treatment, as he does not view himself as having a mental disorder. Dr. Wingert also recommended that Father complete anger management and domestic violence programs and couples counseling for marital discord. Dr. Wingerts deferred the psychosexual issues to Dr. Hall.

63. Father is not presently willing and able to provide his child with a safe family home, even with the assistance of a service plan because of chronic mental health issues, incomplete parenting services, his lack of insight as to his impairment, his unaddressed domestic violence issues and his lack of participation in the Court ordered psychosexual examination to address the DHS' concern regarding Father being confirmed as a perpetrator of sexual abuse to another child in a different CWS case.

64. It is not reasonably foreseeable that Father will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two years from the time foster custody was first ordered by the court.

(1)   Father claims the family court erred by terminating his parental rights based upon the unsubstantiated contention by Appellee Department of Human Services (DHS) that Father is a "confirmed" perpetrator of sexual abuse to another child in a different child welfare services (CWS) case.  Father contends that there was insufficient evidence to establish that he committed the asserted sexual abuse.

DHS's Petition for Temporary Foster Custody contained the allegation that Father was a confirmed perpetrator of sexual abuse to another child in a current CWS case.  A DHS social worker also testified that Father was a confirmed perpetrator of sexual abuse in the other DHS case.  Father has denied that he committed sexual abuse.

Contrary to Father's contention on appeal, the family court did not make a finding that Father was a confirmed perpetrator of sexual abuse or base its decision to terminate Father's parental rights on such a finding.  Rather, in light of the DHS's assertion and concern that Father was a confirmed perpetrator of sexual abuse, the family court ordered *inter alia* that Father participate in, and successfully complete, a psychosexual evaluation as part of the Family Service Plan. Father does not dispute that he agreed to participate in the psychosexual evaluation.  In FOF 63, the family court pointed to Father's lack of participation in the court-ordered psychosexual examination as one of the factors supporting the finding that Father was not willing and able to provide a safe family home. Thus, the family court based its decision on Father's failure to participate in the court-ordered psychosexual examination, not on an express finding that Father committed a sexual abuse.

As noted by DHS, under Hawaii Revised Statutes (HRS) § 587A-7(a)(5) (2013 Supp.), among the factors that the family court was required to consider in determining whether Father is willing and able to provide a safe family home are the "[r]esults of psychiatric, psychological, or developmental evaluations of . . . <u>alleged</u> perpetrators[.]"  (Emphasis added).  Moreover, pursuant to HRS § 587A-7(a)(12), the family court was required to

consider "[w]hether the child's family has demonstrated an understanding of and involvement in services that have been recommended by the department or court-ordered as necessary to provide a safe family home for the child[.]"

In short, DHS raised a concern about Father sexually abusing another child and although Father agreed to participate in the psychosexual evaluation ordered by the family court, he failed to do so.

(2)   Contrary to Father's claim, there was sufficient evidence presented that Father suffers from a mental disorder that affects his ability to provide a safe family home.

In a psychological evaluation of Father, Dr. John Wingert (Dr. Wingert) diagnosed Father as having bipolar and personality disorders.   Dr. Wingert noted that Father is aware of his bipolar diagnosis, but disputes the diagnosis and refuses to take medication.   Dr. Wingert testified that the failure to take medication further indicates problems in day-to-day functioning and could be a safety concern if Father were caring for a child.   Dr. Wingert opined that "[i]t is unlikely that [Father] has progressed at all in services and prognosis for significant positive change is regarded as poor.  He is viewed as at increased risk for child neglect and child abuse related concerns."   Dr. Wingert testified that Father has chronic and severe mental health issues that hinder his ability to safely parent his child, and that Father cannot provide a safe home for the child.

Although Father's psychotherapist, Glenn Kondo, testified that Father had made progress in his treatment and was stable, he confirmed that Father's diagnosis at time of trial was bipolar II.   Likewise, Father's case manager testified that Father's diagnosis is bipolar, and further testified that although Father was prescribed medication, he eventually declined to continue taking the medication.

The family court did not terminate Father's parental rights based solely on the fact that Father has a bipolar disorder.   Rather, the family court found that Father did not

view himself as having a medical disorder and that his mental health issues were unresolved.  See FOF 56, 58, 59 and 62.  The family court also noted Father's diagnosis of personality disorder, with antisocial, paranoid, and narcissistic traits, which made Father disregard social standards and values, have rebellious and antisocial behaviors, made it difficult for Father to accept responsibility, and resulted in a increased risk for child neglect and child abuse related concerns.  See FOF 62.

The record contains sufficient evidence to support the family court's findings regarding Father's mental illness and those findings support the family court's conclusions that Father's mental illness affects his ability to provide a safe family home for the child.

(3)  Father also contends that there was insufficient evidence to support the other bases relied upon to show that Father was unable to provide a safe family home, which Father contends were: (a) Mother's mental illness combined with the fact that Father will not leave Mother; (b) Father's alleged aggression; and (c) a prior unrelated parental termination case in Nevada.

There was sufficient evidence that Mother suffers from serious mental illness and that Father was unwilling to leave Mother.  Thus, the family court focused on Father's ability to keep child safe in those circumstances.  Given the evidence in the record, we cannot conclude that the family court was clearly erroneous in its findings that there were safety concerns regarding Father's "inability to be his wife's supervisor and caretaker" and that he "cannot be protective of the child because, although he is considered higher functioning than Mother, he has severe mental health issues and unresolved violent and threatening behavior of his own."

The family court did not base its termination ruling on Father's being aggressive.  Rather, the court's ruling relied on, inter alia, Father's unaddressed domestic violence issues.  There is evidence in the record that Father and Mother have a history

of domestic violence in their relationship and thus the family court did not err.

Similarly, the family court did not base its decision on Father's prior involvement with child protective services in Nevada. FOF 10 recites the family's involvement with child protective services in Nevada and notes that Mother and Father's parental rights were terminated as to child's sibling. However, the family court's ruling does not indicate that it based its decision in this case on what occurred in the Nevada proceedings. Moreover, even if the family court had considered the family's history in the Nevada case, it would not be erroneous. Under HRS § 587A-7(a)(6), safe family home factors that the family court must consider include "[w]hether there is a history of abusive or assaultive conduct by the child's family members[.]" The family court's ruling in this case that it would not find aggravated circumstances did not preclude the court from considering Father's history of harm to another child. See HRS § 587A-28(e)(4) (2013 Supp.).

Therefore,

IT IS HEREBY ORDERED that the Order Terminating Parental Rights, filed on July 30, 2013 in the Family Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawai'i, May 9, 2014.

On the briefs:

Rebecca A. Copeland
for Appellant-Father

Audrey L. Whitehurst
Mary Anne Magnier
Deputy Attorneys General
for Appellee
Department of Human Services

Presiding Judge

Associate Judge

Associate Judge